1999 ME 184

**Edward KEZER et al.**

v.

**MARK STIMSON ASSOCIATES et al.**

Supreme Judicial Court of Maine.

Argued Nov. 2, 1999.

Decided Dec. 15, 1999.

Michael J. Waxman (orally), Portland, for plaintiffs.

Kevin J. Beal (orally), Jonathan S. Piper, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, for Mark Stimson Assoc. and others, defendants. Theodore H. Irwin Jr. (orally), Douglas, Denham Rogers & Hood, Portland, for Thomas and Beth Peaslee, defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Edward and Donna Kezer appeal from the summary judgment (Cumberland County, *Cole, J.*) entered in favor of the defendants Mark Stimson Associates, Mark Stimson, Dawn Klein, Joyce Frost (the Stimson defendants), and Thomas and Beth Peaslee. On appeal, the Kezers contend that the trial court erred when it failed to recognize that they had generated a genuine issue of material fact. We affirm the judgment.

## I. FACTS [1]

[¶ 2] This controversy concerns the purchase of a house and real estate on Harris Road in Cumberland by the Kezers from the Peaslees. The Peaslees listed the sale of their home with Mark Stimson Associates, a real estate agency. The Kezers first looked at the home on March 16, 1996. The Kezers were given a disclosure form that stated that the well on the property had been tested and that the results were satisfactory. The Kezers signed the form and made out a deposit check for the property. The next day the Kezers drove through the neighborhood and saw what they thought was a junk yard on Harris Road. They spoke to Thomas Peaslee, who told them that there was a metal recycling shop in the area and that the Maine Department of Environmental Protection (DEP) had investigated it but that there were no problems.

[¶ 3] Between March 16 and March 18, the Kezers and the Peaslees exchanged offers and counteroffers through their respective real estate agents. On March 18, 1996 the Kezers signed a purchase and sale agreement. The agreement stated that the buyers were encouraged to seek professional assistance when evaluating the suitability of the property.

[¶ 4] The closing took place on May 17, 1996. In the meantime, the Kezers obtained two water test reports, one done for the Peaslees by a private laboratory in early 1996 and one done by a state laboratory in 1995. Edward Kezer spoke with a neighbor of the Peaslees who indicated that there were problems with the water in the neighborhood. When he inquired at the Town Hall, Edward Kezer was referred to the DEP. From speaking with Larry Brown at the DEP immediately before the closing, Donna Kezer learned that a 1993 DEP test of the Peaslees' well showed contaminants but at levels considered safe for human consumption. At the closing and at the request of the Peaslees, Larry Brown faxed copies of a 1994 DEP test, a table summarizing contaminants found in four tests in 1993 and 1994, and the 1994 letter from Brown to Peaslee to which the table was attached. The faxed documents were given to the Kezers. Before proceeding with the closing the Kezers consulted with their attorney who advised them that they were bound to proceed. The Kezers threatened to sue the Peaslees who then refused to close until the Kezers signed a

---

1. The facts are taken from the statements of material facts filed by the Stimson defendants and the Kezers pursuant to M.R. Civ. P. 7(d). Because the Kezers, in opposing the summary judgment motions, did not respond directly to the numbered paragraphs of the Stimson defendants' statement, the allegations in the Stimson defendants' statements are taken as true. *See Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 6, 721 A.2d 169, 172.

release acknowledging that the Peaslees had fully disclosed all information known to them about water contamination. The Kezers signed the release after consulting again with their attorney, and the closing took place. They moved into the newly purchased home on May 18.

[¶ 5] After they moved into the property the Kezers learned that the Harris Road area had been monitored by the DEP since 1993 because of an auto recycling yard located in the neighborhood. The Harris Road area was the subject of site inspections, various tests and at least two reports pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601–9675 (1994 & Supp.1997). The Kezers requested another water test, and on May 23, 1998, the DEP conducted a test which showed that the water was safe to drink.

[¶ 6] Although the Kezers state in their M.R. Civ. P. 7(d) statement of facts that an abutting neighbor's well was contaminated, the record reference does not support that assertion. Record references do support the assertion that neighbors complained about contaminated water and some of the wells in the area had filter systems installed by the DEP. The record references do not support the Kezers' statement that contamination was spreading to their property. Further, there is no evidence that the Stimson defendants knew about the DEP reports. The most that can be gleaned in this regard from the Kezers' Rule 7(d) statement is that the Stimson defendants knew that the DEP was involved, that an abutting neighbor complained that his well was contaminated, and that the neighbor had a filter system for his water.

[¶ 7] The undisputed evidence is that all water tests done on the Kezer property showed that the water was safe to drink, including the 1993 DEP test which showed trace levels of contaminants and the 1996 test taken after the Kezers moved onto the property. The evidence is also undisputed that the Kezers suffered extreme anxiety and other mental anguish after moving onto the property. They subsequently sold the property at a loss and suffered other adverse financial consequences as a result.

[¶ 8] The Kezers brought a multi-count complaint against the Peaslees and the Stimson defendants. As to the Stimson defendants the Kezers alleged negligence, fraud, negligent infliction of emotional distress, reckless infliction of emotional distress, and unfair trade practices. The trial court granted the summary judgment motions by the Stimson defendants and the Peaslees on all counts.

## II. ABANDONED CLAIMS

[¶ 9] In this appeal, the Kezers did not brief any of the claims against the Peaslees or the unfair trade practices claim against the Stimson defendants. The failure of the Kezers to brief these claims constitutes an abandonment of the appeal on those claims. *See Aseptic Packaging Council v. State,* 637 A.2d 457, 462–63 (Me.1994). The summary judgment as to the Peaslees is affirmed as is the summary judgment on the unfair trade practices claim against the Stimson defendants.

[¶ 10] In spite of failing to brief any of the claims against the Peaslees, the Kezers prolonged the appeal as to them by not dismissing the appeal.[2] We conclude that the Kezers' prolongation of the appeal against the Peaslees warrants the imposition of costs pursuant to M.R. Civ. P. 76(f). We award treble costs and reasonable expenses when the "appeal 'is obviously without any merit and has been taken with no reasonable likelihood of prevailing, and results in delayed implementation of the judgment of the lower court; increased costs of litigation; and dissipation of the

---

2. At oral argument counsel for the Peaslees stated that he had discussed the appeal with the Kezers' attorney who said that the appeal was still being pursued against the Peaslees.

time and resources of the Law Court.' " *Worrey v. Fournier*, 1999 ME 78, ¶ 7, 729 A.2d 907, 908 (quoting from *Brooks v. Town of N. Berwick*, 1998 ME 146, ¶ 12, 712 A.2d 1050, 1054). By failing to brief any issues against the Peaslees, the Kezers could not possibly prevail on the appeal as to the Peaslees. The Kezers should have notified the other parties, as well as the Court, early in the appeal process that they were not pursuing the appeal as to the Peaslees. By not doing so the Kezers have put the Peaslees to the added expense of representation during the appeal and have required the Law Court to expend unnecessary time and resources in preparing for the appeal.

## III. STANDARD OF REVIEW

■ [¶ 11] "[A] party is entitled to a summary judgment if there is no genuine issue of material fact and that party is entitled to a judgment as a matter of law." *Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.*, 627 A.2d 532, 534 (Me.1993) (citing M.R. Civ. P. 56(c)). When reviewing an entry of a summary judgment, we review the evidence in the light most favorable to the party against whom the judgment is issued, and we review the decision for error of law. *See Binette v. Dyer Library Ass'n*, 688 A.2d 898, 901 (Me.1996). We independently determine whether the record supports a summary judgment. *See Casco N. Bank, N.A. v. Estate of Grosse*, 657 A.2d 778, 780 (Me.1995).

## IV. NEGLIGENCE

■ [¶ 12] There can be no negligence without a duty. In their negligence claim the Kezers allege that the Stimson defendants owed a duty to them to disclose contamination issues in, on, or around the property they purchased. The Legislature and the Maine Real Estate Commission, through statute and regulations, have defined the duty that brokers and agents owe to buyers. *See* 32 M.R.S.A. § 13273(2) (1999); Maine Dep't of Prof'l & Fin. Reg.

330.16 (1994). The statutory duty is stated as follows:

> **2. Duty to buyer.** The duty of a seller agent to a buyer is governed by the following.
>
> **A.** A real estate brokerage agency engaged by a seller shall treat all prospective buyers honestly and may not knowingly give false information and shall disclose in a timely manner to a prospective buyer all material defects pertaining to the physical condition of the property of which the real estate brokerage agency knew or, acting in a reasonable manner, should have known. A real estate brokerage agency is not liable to a buyer for providing false information to the buyer if the false information was provided to the real estate brokerage agency by the real estate brokerage agency's seller-client and the real estate brokerage agency did not know or, acting in a reasonable manner, should not have known that the information was false. A real estate brokerage agency is not obligated to discover latent defects in the property.

32 M.R.S.A. § 13273(2)(A).

[¶ 13] This statute limits the duty of the seller's real estate agent to disclose "all material defects pertaining to the physical condition of the property." *Id.* The statute does not require disclosure of environmental hazards in the neighborhood. There is no evidence that any environmental hazard affected the property purchased by the Kezers, nor is there evidence that any hazard was spreading toward the property. The Kezers have failed to demonstrate a statutory duty requiring the Stimson defendants to disclose environmental hazards in the neighborhood.

■ [¶ 14] In addition to the statute there are regulations promulgated by the Real Estate Commission which impose a duty on brokers to obtain and disclose

certain information.[3] Section 19 of chapter 330 of the Rules of the Department of Professional and Financial Regulation Real Estate Commission provides that real estate licensees be "informed regarding known hazardous materials that may impact negatively upon the health and well being of clients and customers." Maine Dep't of Prof'l Fin. Reg. 330.19 (1994). It further requires the licensee to ask the seller whether the seller knows of any "current or previously existing known hazardous materials on or in the real estate" including but not limited to asbestos, lead based paint, radon, and underground storage tanks. *Id.* Because the rule limits information to that of "known hazardous materials on or in the real estate," it does not impose a duty on the Stimson defendants to disclose that the DEP was investigating the neighborhood nor does it impose a duty to disclose that some neighbors complained about water contamination.

[¶ 15] The Kezers request that we extend the common law to impose a duty on the real estate agents of sellers to disclose to buyers information concerning environmental hazards in the neighborhood of the property being sold. By common law sellers of real estate have no obligation to disclose property defects to buyers, *see Stevens v. Bouchard,* 532 A.2d 1028, 1030 (Me.1987), and, as their agents, real estate brokers have all of the defenses as their principals that arise out of the transaction, *see* RESTATEMENT (SECOND) OF AGENCY § 334 (1958). We decline to find a common law duty to disclose environmental hazards in the neighborhood. The Legislature has spoken in this area and an expansion of the duty of real estate agents should be addressed to that body.

[¶ 16] Although we do not find a duty on the part of the Stimson defendants to obtain information about or disclose hazards in the neighborhood, as opposed to defects on the property itself, the Stimson defendants had a duty to use reasonable care to obtain and disclose adverse information about the private water supply on the property. This duty is found in both 32 M.R.S.A. § 13273 and the regulations. Section 16 of chapter 330 of the Rules of the Department of Professional and Financial Regulation Real Estate Commission states:

**Section 16. Private Water Supply Disclosure**

A listing licensee, when listing property served by a private water supply and a licensee representing the buyer in transactions where the property is not listed with an agency, shall ask the seller for the following information:

A. Type of system;

B. Location;

C. Malfunctions;

D. Date of installation;

E. Date of most recent water test; and

F. Whether or not the seller has experienced a problem such as an unsatisfactory water test or a water test with notations.

Such information and any other information pertinent to the private water supply shall be conveyed, in writing, to a buyer prior to or during preparation of an offer. The fact that information regarding the private water supply is not available shall also be conveyed, in writing, when such is the case.

Maine Dep't of Prof'l & Fin. Reg. 330.16 (1994).

[¶ 17] It is not disputed that prior to closing the Kezers had copies of three water tests, plus a table showing at least three additional test results including the 1993 DEP test with trace contaminants. The Stimson defendants argue that there is no duty to inform about a previous unsatisfactory test or test with notations

---

**3.** The rules are promulgated pursuant to the authority in 32 M.R.S.A. § 13280 (1999).

when later tests are satisfactory and do not have notations. This interpretation would mean that only the latest test has to be disclosed if it is satisfactory, and it would render subsection (F) surplusage because if the latest test is satisfactory no other tests would have to be revealed. We do not think that was the intent of the Commission. The regulation means that any unsatisfactory test or test with notations must be disclosed. Furthermore, that information and "any other information pertinent to the private water supply" is to be provided to the buyer "prior to or during preparation of an offer." In this case the offer and counteroffers occurred between March 16 and 18. The 1993 test results were not provided at that time.

[¶ 18] We conclude that section 13273(2) in combination with section 16 of the rules means that the Stimson defendants owed the Kezers a duty to inquire of the Peaslees as to whether there were ever any unsatisfactory tests or tests with notations. There is no evidence that the Stimson defendants were aware of the 1993 DEP test showing trace contaminants until the day of the closing, but there is evidence that several of the Stimson defendants, including Mark Stimson, were aware that the DEP was monitoring wells in the neighborhood. Looking at these facts in the light most favorable to the Kezers, they have raised a genuine issue of material fact as to whether the Stimson defendants used reasonable care to obtain information from the Peaslees about the 1993 test and supply that information to the Kezers.

[¶ 19] In *Binette v. Dyer Library Ass'n,* 688 A.2d 898 (Me.1996), we reversed a summary judgment for the seller's real estate broker. We held that the real estate regulations created a duty to disclose defects of which the real estate broker knew or should have known. We said that the jury should decide whether the real estate agency and the broker exercised reasonable care in light of the regulatory requirements. *See id.,* 688 A.2d at 905.

[¶ 20] Although there is a genuine issue of material fact as to whether the Stimson defendants breached their duty, the Kezers have not shown that a breach by the Stimson defendants caused them damages. The Kezers learned about the 1993 water test before they closed on the property. Even if the Stimson defendants should have known about the 1993 test and furnished it to the Kezers much earlier in the process, the Kezers have not demonstrated that any harm they suffered was caused by the delay in learning the information. The fact that they went ahead with the closing after having the information about the 1993 water test means that any damages stemming from their purchase of the property are not attributable to the nondisclosure. It appears that they were so desirous of closing on the property even after learning about the 1993 test that they released the Peaslees from liability when the Peaslees balked at closing. Because the Kezers have not demonstrated that the nondisclosure of the 1993 water test caused their damages, the Stimson defendants are entitled to a summary judgment on the negligence claim.

## V. EMOTIONAL DISTRESS CLAIMS

[¶ 21] Likewise, the Stimson defendants are entitled to a summary judgment on the emotional distress claims. The negligence alleged in the negligent infliction of emotional distress claim is the failure to disclose certain facts by the Stimson defendants to the Kezers. As discussed above, there is no duty to disclose environmental hazards in the surrounding area. In the absence of a breach of duty, there is no liability for emotional distress. *See Bryan R. v. Watchtower Bible & Tract Soc'y of New York, Inc.,* 1999 ME 144, ¶ 30, 738 A.2d 839, 848. The only duty that may have been owed by the Stimson defendants is the disclosure of the 1993 DEP water test, but the Kezers had that information before they closed on the property. All of their described mental distress took place after they bought the

property and because they bought the property. They have failed to demonstrate causation.

[¶ 22] As to the claim for reckless infliction of emotional distress, not only have the Kezers failed to demonstrate causation, but as a matter of law, the conduct of the real estate agents in failing to learn about and disclose the 1993 test was not "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." *Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842, 847. The Superior Court did not err in granting summary judgment to the Stimson defendants on the emotional distress claims.

## VI. FRAUD

[¶ 23] The remaining claim is fraud. The Kezers argue that they have demonstrated fraud by showing that the Stimson defendants actively concealed the truth. Where there is no affirmative misrepresentation by the defendant, in order to prove fraud a plaintiff must demonstrate an active concealment of the truth or a special relationship that imposes a duty to disclose on the defendant. *See Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me.1995). Here there was neither evidence of an affirmative misrepresentation nor evidence of a special relationship.

[¶ 24] "Active concealment of the truth" connotes steps taken by a defendant to hide the true state of affairs from the plaintiff. In *Fitzgerald*, the seller of real estate did not tell the buyer, until immediately after the closing, that the well water was not safe to drink. *Id.* at 1068. In fact, the well had been abandoned because the water was contaminated, and the seller had been using a neighbor's water source. The seller reconnected the well a few days before the closing and had the water tested again, but it was still unsafe. *See id.* These facts were sufficient to constitute an active concealment of the truth. *See id.* at 1069.

[¶ 25] There is no evidence that the Stimson defendants actively concealed the truth. The Kezers' Rule 7(d) statement avers that the Stimson defendants knew that a neighbor complained about his well being contaminated and that the DEP was involved in testing in the area. The Kezers, however, have not presented any evidence that the Stimson defendants took steps to conceal from the Kezers that the DEP had been testing in the neighborhood or to conceal that neighbors had complained that their wells were contaminated.

[¶ 26] Fraud also requires justifiable reliance, and in the ordinary fraud case where there has been a misrepresentation, this means that the plaintiff has justifiably relied on the misrepresentation to the plaintiff's detriment. *See Fitzgerald*, 658 A.2d at 1069. When there has been active concealment of a material fact, the plaintiff must justifiably rely on the omission of the material fact. Even if the Stimson defendants attempted actively to conceal the environmental hazard in the neighborhood, the Kezers learned about DEP involvement and the 1993 DEP water test before they closed on the property. Therefore, the Kezers could not have relied upon their lack of knowledge about DEP involvement or lack of knowledge about the DEP water test as a reason for going forward with the closing. The Superior Court did not err in granting summary judgment to the Stimson defendants on the fraud claim.

The entry is:

Judgment affirmed. The appellants or their counsel are ordered to pay to the Peaslees treble costs and $300 toward their attorney fees and expenses.