# United States Court of Appeals
## For the First Circuit

No. 21-1822

PLEASANTDALE CONDOMINIUMS, LLC,

Plaintiff, Appellant,

v.

THOMAS J. WAKEFIELD,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Roy T. Pierce, with whom Jensen Baird was on brief, for appellant.
Daniel L. Cummings, with whom Norman, Hanson & DeTroy, LLC was on brief, for appellee.

June 21, 2022

**SELYA**, **Circuit Judge**. Following its purchase of an apartment complex, plaintiff-appellant Pleasantdale Condominiums, LLC (Pleasantdale) sued the seller, defendant-appellee Thomas J. Wakefield (Wakefield), alleging nondisclosure of material information under a Maine statute. Hidden within the penumbra of the complaint was what Pleasantdale now characterizes as an independent claim for fraud in the nature of active concealment. The district court entered summary judgment in Wakefield's favor on all claims. Pleasantdale appeals, asserting that the challenge to its independent claim for fraud in the nature of active concealment was not properly before the district court and that, if it was, summary judgment should not have entered on that claim. After careful consideration, we affirm the district court's entry of summary judgment.

**I**

We briefly rehearse the relevant facts and travel of the case. Our account is drawn from the summary judgment record, and we take the facts and the reasonable inferences therefrom in the light most flattering to the party against whom summary judgment was entered (here, Pleasantdale). See Mancini v. City of Providence, 909 F.3d 32, 37 (1st Cir. 2018); McKenney v. Mangino, 873 F.3d 75, 78 (1st Cir. 2017).

In 1975, Wakefield and a partner purchased real property located at 9 Cole Street, South Portland, Maine (the Property).

- 2 -

About a year later, construction began for the first of two four-unit apartment buildings. After completion of the first building but prior to construction of the second building, Wakefield submitted a site plan (the Site Plan) to the city of South Portland. As relevant here, the Site Plan, which was recorded in the Cumberland County Registry of Deeds, designated an area on the Property "to be filled" (the Fill). The owners then proceeded to construct the second four-unit building on the Property. More than two decades after securing approval of the Site Plan (that is, around the early 2000s), Wakefield completed the Fill, using gravel and assorted debris.

We fast-forward to the spring of 2019. At that time, Fred Andrews (Andrews) of Spectrum Real Estate LLC contacted Wakefield (who by then had become the sole owner of the Property) and asked if he would sell the Property. Andrews had in mind a potential purchaser, Telos Capital (Telos). After Wakefield agreed to consider selling, Andrews served as the dual agent for both Wakefield and Telos during the ensuing negotiations.

On May 6, 2019, Telos tendered a signed purchase and sale agreement to Wakefield. That same day, Telos entered into a contract (the Assignment), assigning all of its rights under the prospective purchase and sale agreement to Pleasantdale. There is no evidence in the record that Wakefield knew of the Assignment at that time.

On May 7, Wakefield — still unaware of the Assignment — made a counteroffer to Telos, eliminating all contingencies (including an inspection contingency). Wakefield and Telos agreed to these amendments and signed the purchase and sale agreement, as amended (the Agreement), on May 8. The parties understood that the Property was being sold "as is." By virtue of the Assignment, Pleasantdale stepped into the shoes of Telos with respect to the Agreement. A closing took place on June 3, 2019, and Pleasantdale purchased the Property for $725,000. Pleasantdale had no direct communication with Wakefield and the only documents upon which it relied in purchasing the Property were the Agreement and the Assignment.[1]

Some months after the closing, Pleasantdale began construction of additional apartment units on the Property. In the course of excavation, Pleasantdale's contractor uncovered the Fill. The existence of the Fill impeded Pleasantdale's plans for building additional apartment units on the Property. Pleasantdale

---

[1] About a year after the closing, Pleasantdale received an unsigned property disclosure form. Andrews prepared and completed the form (apparently on a standard Spectrum Real Estate form). He says that he questioned Wakefield in the process, but Wakefield did not sign or otherwise acknowledge the completed form. Moreover, the record contains no evidence that Wakefield ever saw the completed form. And at any rate, Pleasantdale — which first received a copy of the completed form in July of 2020 — could not have relied upon it when purchasing the Property.

cried foul, alleging that no one had ever disclosed to it that a portion of the Property had been filled.

Frustrated in its aspirations to construct additional apartment units, Pleasantdale sued Wakefield in a Maine state court. In its fifty-two-paragraph complaint, Pleasantdale alleged claims for fraud and negligent misrepresentation. As pleaded, both counts were based on the alleged violation of a Maine statute. See Me. Rev. Stat. Ann. tit. 33, § 173(5).[2] In the fraud count, Pleasantdale alleged (in paragraph 39) that section 173(5) imposed on Wakefield an "affirmative[] obligat[ion] to disclose . . . 'known defects.'" In the negligent misrepresentation count, Pleasantdale alleged (in paragraph 49) that "Wakefield had a statutory duty" — under section 173(5) — "to disclose the presence of the 'uncontrolled fills' on the Property." Pleasantdale went on to allege that Wakefield breached that statutory duty.

Although the statutory disclosure requirement was the cornerstone of Pleasantdale's complaints, paragraph 42 of the complaint is of particular pertinence to the present proceeding. There, Pleasantdale alleged that:

> 42. Not only did Mr. Wakefield have an affirmative statutory duty to disclose the existence of the 'uncontrolled fills' on the

[2] Under section 173(5), a "seller of residential real property shall provide to the purchaser a property disclosure statement containing," among other things, information regarding "[a]ny known defects" in the property being sold. Me. Rev. Stat. Ann. tit. 33, § 173(5).

- 5 -

> Property, he actively concealed the presence of those 'uncontrolled fills' by (a) burying them so that they could not be seen by visual observation by prospective purchasers of the Property, including Pleasantdale; and (b) by lying about his knowledge of their presence on the Property Disclosure.

Paragraph 45 appeared to link this active concealment allegation to the statutory claim by averring that "[a]s a direct and proximate result of Pleasantdale's reliance on Mr. Wakefield's failure to disclose . . . , Pleasantdale has sustained considerable pecuniary damage."

Wakefield answered Pleasantdale's complaint, invoked diversity jurisdiction, and removed the action to the United States District Court for the District of Maine. See 28 U.S.C. §§ 1332(a), 1441(b). The district court entered a scheduling order, which included a discovery period. See D. Me. R. 16.2. On the day that discovery closed, Wakefield filed a notice of intent to seek "summary judgment on the complaint." See id. 56(h)(2).

Wakefield proceeded to file his summary judgment motion. In it, he argued that he was entitled to summary judgment on both counts primarily because section 173(5) applied only to "residential real property," which the statute defined as "real estate consisting of one or not more than 4 residential dwelling units" (emphasis in original). Wakefield explained that the Property, when sold, comprised eight residential units and that, therefore, the strictures of section 173(5) were inapposite. He

- 6 -

also argued that the doctrine of caveat emptor absolved him of any liability to Pleasantdale.

Wakefield accompanied his motion for summary judgment with a statement of material facts not in dispute (the Statement). See id. 56(b). Pleasantdale filed a counter-statement of material facts in which it "[a]dmitted solely for purposes of summary judgment" every fact set forth by Wakefield. See id. 56(g) (permitting admission of facts solely for purposes of summary judgment).

In its response to Wakefield's motion for summary judgment, Pleasantdale conceded that section 173(5) did not apply. It therefore acknowledged that it could not recover on its negligent misrepresentation claim but asserted that "the same [wa]s not true with respect to [its] fraud claim." To validate this assertion, Pleasantdale advanced an "alternate active concealment basis for [its] fraud claim," which — it maintained — "remain[ed] viable."

In his reply to Pleasantdale's response, Wakefield met the newly emergent active concealment claim head on. He argued both that fill is "[b]y definition . . . placed underground and buried" and that, in any event, Pleasantdale had failed to submit any "evidence that Wakefield took steps to hide the fact that the Fill existed." Pleasantdale did not move to strike this portion

of the reply, to file a sur-reply, to reopen discovery, or to supplement the summary judgment record.

On September 21, 2021, the district court decided the motion for summary judgment on the papers. See Pleasantdale Condos., LLC v. Wakefield, No. 21-00014, 2021 WL 4313859 (D. Me. Sept. 21, 2021). The court first determined that section 173(5) did not apply to the Property and, thus, afforded Pleasantdale no avenue for relief. Id. at *2. That determination disposed of the negligent misrepresentation claim. See id. The same reasoning also disposed of the fraud claim "to the extent that [the fraud claim] [wa]s based on the statutory duty to disclose." Id. As to the "second theory of fraud," the court noted that "[Pleasantdale] point[ed] to no facts that demonstrate that Mr. Wakefield 'actively concealed' (i.e., took steps to conceal) the debris." Id. Accordingly, the court held that "[Wakefield] [wa]s entitled to summary judgment on both counts." Id. Pleasantdale did not move for reconsideration, and this timely appeal followed.

## II

Our standard of review is familiar: "[w]e review orders for summary judgement de novo." Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999); see Moore v. British Airways PLC, 32 F.4th 110, 114 (1st Cir. 2022). In conducting this review, we examine "the record and all reasonable inferences

- 8 -

therefrom in the light most hospitable to the summary judgment loser."  Houlton Citizens' Coal., 175 F.3d at 184.

To prevail on summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009). In order to trigger the process, "the movant must [first] adumbrate 'an absence of evidence to support the nonmoving party's case.'" Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir. 1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  The burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact.  See id.

"Genuine issues of material fact are not the stuff of [a nonmovant's] dreams."  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  "On issues where the nonmovant bears the ultimate burden of proof, [it] must present definite, competent evidence to rebut the motion" for summary judgment.  Id.; see Brennan, 888 F.2d at 191.  Evidence that is "conjectural or problematic" will not suffice to forestall summary judgment.  Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989).

Before us, Pleasantdale takes issue only with the district court's resolution of its fraud count.  It offers two reasons why — in its view — the district court's order should not stand.  Neither reason is convincing.

Pleasantdale first complains that it was the victim of a sneak attack. The district court's resolution of the active concealment claim, Pleasantdale says, surprised it because "[Wakefield] never moved for summary judgment on that claim." This plaint, we think, comprises more cry than wool.

Pleasantdale argues that it was unfairly surprised because Wakefield's motion did not place the active concealment claim in issue. This argument has a patina of plausibility: when Wakefield initially moved for summary judgment, he trained his fire on the absence of liability under the statute. That emphasis, however, was invited by Pleasantdale. After all, Pleasantdale's purported active concealment claim was itself concealed.

Pleasantdale's complaint, fairly read, did not plainly plead an independent claim for active concealment. Cf. Fed. R. Civ. P. 8(a) (requiring "plain statement" of claims in plaintiff's complaint). Of the fifty-two paragraphs in the complaint, the only paragraph that so much as mentions active concealment was paragraph 42. Even then, paragraph 45 indicated that paragraph 42 was in service of Wakefield's statutory claim under section 173(5) and linked Wakefield's putative liability to Wakefield's failure to adhere to his (alleged) statutory duty to disclose.

Pleasantdale makes a closely related argument. It notes that Local Rule 56(h) provides that a party intending to move for

summary judgment must file a notice of his intention to so move.[3] See D. Me. R. 56(h). Pleasantdale claims that because Wakefield's Local Rule 56(h) notice only mentioned the statutory basis for Pleasantdale's claims, the district court never "authorize[d]" Wakefield to seek summary judgment on the active concealment claim.

We do not think that Wakefield's Local Rule 56(h) notice should be given such a crabbed reading. Nor do we think that the notice can be said to have misled Pleasantdale. As we have said, no independent claim of active concealment was readily apparent from the face of the complaint. Given the way in which the active concealment claim was hidden in the penumbra of the complaint, Wakefield scarcely can be faulted for not initially responding to this hidden claim.

In all events, Pleasantdale was the master of the complaint. See, e.g., López-Muñoz v. Triple-S Salud, Inc., 754 F.3d 1, 4 (1st Cir. 2014); ConnectU LLC v. Zuckerberg, 522 F.3d 82, 93 (1st Cir. 2008); Britell v. United States, 318 F.3d 70, 75 n.3 (1st Cir. 2003). Thus, it must have recognized that it was attempting an active concealment claim. And because Wakefield had secured leave of court to move "for summary judgment on the

_____

[3] Local Rule 56(h) provides that "a party intending to move for summary judgment shall file no later than seven (7) days after the close of discovery . . . a notice of intent to move for summary judgment, and the need for a pre-filing conference with a judicial officer." D. Me. R. 56(h).

- 11 -

complaint," Pleasantdale must have understood that its active concealment claim was at risk.

The sockdolager, of course, is the content of the parties' dueling memoranda regarding the summary judgment motion. In its response to Wakefield's summary judgment motion, Pleasantdale asserted that it had an "alternate active concealment basis for [its] fraud claim." It also suggested that — notwithstanding Wakefield's arguments in support of summary judgment — its active concealment claim "remain[ed] viable." It is thus evident that Pleasantdale regarded the issue of active concealment as squarely in play for purposes of summary judgment. That recognition, in turn, defeats its claim of surprise: a party hardly can claim unfair surprise when a court takes up an issue that the party itself has put before the court. Cf. Curet-Velázquez v. ACEMLA de P.R., Inc., 656 F.3d 47, 56-57 (1st Cir. 2011) (finding that appellants could not claim unfair surprise based on opposing party's reference to documents introduced by appellants); United States v. Powell, 652 F.3d 702, 708 (7th Cir. 2011) (explaining that defendant could not claim unfair surprise when government requested aiding and abetting instruction after defendant had employed a trial strategy aimed at showing he was not a principal).

In so concluding, we point to the parties' actions following Pleasantdale's response to the summary judgment motion.

In his reply to that response, Wakefield joined issue with the newly emergent active concealment claim and offered a reasoned rebuttal to it. He asserted that "[t]here is no evidence that [he] took steps to hide the fact that the Fill existed."

Had Pleasantdale been surprised by this rejoinder, it had remedies at hand. It could have moved to strike those portions of Wakefield's reply or, alternatively, asked for leave to file a sur-reply (in which it could have spelled out its claim of unfair surprise). Pleasantdale did neither, and it cannot now fault the district court for resolving an issue that was teed up for decision by the parties. Pleasantdale's claim of surprise therefore fails.

**B**

This brings us to Pleasantdale's second plaint: that Wakefield was not entitled to summary judgment on the merits of the active concealment claim. Maine law governs this issue. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Eaton v. Penn-Am. Ins. Co., 626 F.3d 113, 114 (1st Cir. 2010).

To establish a claim for active concealment under Maine law, a plaintiff must show that the defendant took steps "to hide the true state of affairs from the plaintiff." Kezer v. Mark Stimson Assocs., 742 A.2d 898, 905 (Me. 1999). Consequently, to avoid summary judgment in this case, the record, viewed in the light most hospitable to Pleasantdale, would have to contain definite, competent evidence from which a rational factfinder

- 13 -

could conclude that Wakefield took steps to hide the Fill from Pleasantdale. Pleasantdale has identified no such evidence in the summary judgment record. These are the relevant facts:

- In 1976, the Site Plan, designating an area in the Property to be filled, was recorded in the Cumberland County Registry of Deeds. As such, it became a matter of public record.

- The Site Plan made it apparent that a portion of the Property would be filled.

- Prior to or around the early 2000s, gravel and debris were used to fill the area of the Property designated on the Site Plan, and the Fill was covered. The Property was not for sale at that time, and Pleasantdale was not in the picture.

- When Pleasantdale acquired the Property, there were no direct communications between Pleasantdale and Wakefield. Moreover, Wakefield made no representations to Pleasantdale, which purchased the Property "as is." Nor is there any evidence that Wakefield made any representations to Telos (Pleasantdale's assignor).

- 14 -

- The only documents that Pleasantdale relied on before executing the Assignment were the Agreement and the Assignment itself.[4]

- From the time that Wakefield was first contacted by Andrews until the time that the sale of the Property was completed, nothing in the record so much as suggests that Wakefield (or any person acting on his behalf) took any steps to conceal the Fill.

These facts, together with the reasonable inferences therefrom, are entirely inadequate to establish that Wakefield took steps to hide the Fill from Pleasantdale. See id. (defining "active concealment" as "steps taken by a defendant to hide the true state of affairs from the plaintiff"); see also Active Concealment, Black's Law Dictionary (11th ed. 2019) (defining "active concealment" as "[t]he concealment by words or acts of something that one has a duty to reveal"). A purchaser's ignorance of facts, without more, does not amount to active concealment. See Kezer, 742 A.2d at 905.

---

[4] Pleasantdale adverts in passing to the unsigned disclosure form. But that form was neither received nor reviewed by Pleasantdale until well after the transaction closed. Moreover, there is no evidence in the record that either Pleasantdale or Telos relied upon the unsigned disclosure form in connection with the sale of the Property. The unsigned disclosure form is, therefore, irrelevant. Cf. Kezer, 742 A.2d at 905 (observing that timing of information vis-à-vis timing of closing is critical to reliance inquiry).

- 15 -

Pleasantdale's only rejoinder is that Wakefield buried the Fill "so that [it] could not be seen by visual observation by prospective purchasers." But the record will not support a reasonable inference that Wakefield had a malign intent when he covered the Fill. The burying of the Fill preceded the sale by roughly two decades; there is no evidence that the Property was offered for sale in the interim; and there is no evidence that the burying of the Fill was in any way connected with a plan to sell the Property. Under these circumstances, no inference favorable to Pleasantdale can reasonably be drawn from the covering of the Fill. As the district court observed, "[f]ill, by its nature, is generally covered." Pleasantdale Condos., 2021 WL 4313859, at *2.

If more were needed — and we doubt that it is — the fact that the Site Plan was recorded belies any suggestion that Wakefield intended to conceal the Fill from prospective buyers. Recorded site plans are public records, see Me. Rev. Stat. Ann. tit. 1, § 402(3), and spelling out one's plans for future action in a public record is the antithesis of an intent to conceal, cf. McKinnon v. Honeywell Int'l, Inc., 977 A.2d 420, 426 (Me. 2009) (noting absence of fraudulent concealment when relevant facts were "publicly available in [] documents filed . . . with the Patent and Trademark Office").

We need go no further. Discovery in this matter has closed and Pleasantdale has wholly failed to adduce facts

- 16 -

sufficient to establish that Wakefield took any steps to hide the Fill from it.  Thus, no rational factfinder could conclude that Wakefield actively concealed the Fill from Pleasantdale.  It follows inexorably that Wakefield was entitled to summary judgment as a matter of law on Pleasantdale's active concealment claim.

### III

Because we find that the issue of active concealment was properly before the district court and that the record contains no genuine issue as to any material fact concerning active concealment, Wakefield was entitled to summary judgment as a matter of law.

**Affirmed**.