MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 11
Docket:      Cum-24-14
Argued:      November 13, 2024
Decided:     February 6, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

ALRIG USA ACQUISITIONS LLC

v.

MBD REALTY LLC

CONNORS, J.

[¶1]   Alrig USA Acquisitions LLC appeals from the judgment of the Superior Court (Cumberland County, *Cashman, J.*) granting MBD Realty LLC's motion to dismiss, pursuant to M.R. Civ. P. 12(b)(6), Alrig's complaint for breach of contract and fraud.  The gist of Alrig's complaint is that, either under the language of its purchase and sale agreement with MBD or under common law fraud principles, MBD had a duty to disclose that the City of Portland had plans to condemn a portion of the property that MBD was selling Alrig.  The Superior Court concluded as a matter of law that MBD had no such duty, and we agree.

## I.  BACKGROUND

[¶2]  The following facts are drawn from Alrig's complaint, viewed in the light most favorable to it.  *See Berounsky v. Oceanside Rubbish, Inc.*, 2022 ME 3,

2

¶ 2, 266 A.3d 284. Alrig is a commercial real estate developer. MBD owns commercial property in the Libbytown neighborhood of Portland near the Interstate 295 exchange at Congress Street. In February 2022, Alrig and MBD entered a purchase and sale agreement for Alrig to purchase the property for $2.5 million[1] with a $50,000 deposit.

[¶3] Prior to entering the agreement, MBD was aware that the City of Portland planned to redevelop the Libbytown neighborhood to construct a roundabout that would require the City to take over a portion of the property by eminent domain. MBD did not disclose to Alrig the planned redevelopment or the likelihood of the taking prior to executing the agreement.

[¶4] The original agreement, attached as an exhibit to the complaint, included the following relevant clauses:

- **Section 5(b):** Under the heading "Evidence of Title," section 5(b) provided that, in the event of an uncured title defect, Alrig may "terminate this Agreement, whereupon the Deposit shall be promptly returned to [Alrig], and this Agreement shall thereafter be of no further force or effect."

- **Section 6:** The paragraph under the heading "Due Diligence" included a clause that if Alrig provided written notice within a defined Inspection Period "that it [was] not satisfied with the Property for any reason whatsoever, then . . . this Agreement shall terminate, the Deposit shall be

---

[1] In both the complaint and its brief, Alrig states that the purchase price was $2.5 million. Section 1(b) of the purchase and sale agreement states that the purchase price was $2.35 million. The purchase price is not relevant to this appeal.

promptly refunded to [Alrig] and neither party shall have any further liability or obligation hereunder . . . ". Alrig had "the right to extend the Inspection Period for one (1) thirty (30) day period by delivering notice to [MBD] of its need for such extension prior to the expiration of the Inspection Period . . . accompanied by a Ten Thousand and 00/100 Dollars ($10,000) payment to the Title Company for such extension."

- **Section 16:** The paragraph under the heading "Casualty and Condemnation" provided, "In the event that following the Effective Date the Property . . . shall be subject to a taking by eminent domain, condemnation or otherwise, [Alrig] may at its sole option . . . terminate this Agreement, in which event [Alrig] shall be entitled to immediate refund of the Deposit and the Extension Payment, if applicable, and the parties hereto shall be relieved of all obligations hereunder. . . . [MBD] and [Alrig] each agree to forward promptly to the other any notice of intent received pertaining to a taking of all or a portion of the Property."

[¶5] After paying the initial $50,000 deposit, Alrig exercised its right to extend the inspection period, paying an additional $10,000 in deposit funds. One month later, the parties amended the agreement to allow an additional extension of the inspection period, with an additional $10,000 deposit payment. Finally, in June 2022, the parties executed an amendment allowing for a third extension of the inspection period. It is this last amendment and its interplay with section 16 that forms the focus of the appeal.

[¶6] The amendment[2] provided in relevant part:

---

[2] This amendment was not attached to the complaint. It was, however, attached as an exhibit to MBD's motion to dismiss. As the trial court noted, because the amendment is central to Alrig's claims and referenced in the complaint, and because its authenticity is not disputed by the parties, it was

4

Purchaser and Seller desire to amend the Agreement pursuant to the terms of this Amendment to: (i) waive Purchaser's due diligence and title review contingencies; (ii) provide for two additional earnest money deposits; (iii) deem the Deposit nonrefundable; (iv) extend the Closing Date; and (v) such other changes as set forth herein.

. . .

1.    Purchaser's Due Diligence and Title Review.  Purchaser hereby waives its title contingency contained in Section 5(b) of the Agreement and its due diligence contingency contained in Section 6 of the Agreement.

2.    Payment of Additional Deposit; Deposits Nonrefundable. Within two (2) business days following the date hereof, Purchaser shall pay an additional deposit, in the amount of Fifty Thousand Dollars ($50,000) (the "First Additional Deposit") to the Title Company, which shall become part of the Deposit.  On September 1, 2022, Purchaser shall pay an additional deposit, in the amount of Fifty Thousand Dollars ($50,000) (the "Second Additional Deposit") to the Title Company, which shall become part of the Deposit.  Effective as of the date hereof, the Deposit, including any Extension Payments, the First Additional Deposit and the Second Additional Deposit, shall be deemed nonrefundable (but applicable against the Purchase Price at Closing), except in the event of a default by Seller pursuant to Section 12(b) of the Agreement.[3]

---

properly considered on the motion to dismiss.  *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶¶ 9-10, 843 A.2d 43.

[3]  Section 12 provided that if Alrig defaulted in the performance of its obligations under the agreement, MBD would be entitled to terminate the agreement and receive the deposit and extension payment as liquidated damages; conversely, if MBD defaulted, Alrig could either terminate the agreement and be entitled to the prompt return of the deposit and extension payment or seek specific performance in court.

[¶7]  In accordance with the amendment, Alrig paid an additional $100,000, bringing the total deposit amount to $170,000.  At no point prior to the amendment did MBD disclose Portland's plans for the Libbytown redevelopment.  In August 2022, Alrig learned of the redevelopment for the first time.  Shortly thereafter, Alrig issued a notice of termination and requested return of the deposit pursuant to section 16.  MBD refused to return the deposit.

[¶8]  Following unsuccessful mediation, in May 2023 Alrig filed a two-count complaint seeking return of the $170,000 deposit.  Count I alleged that MBD breached the contract by refusing to return the deposit because, pursuant to Section 16, Alrig's deposit was refundable if the property became subject to a taking by eminent domain.  Count II alleged, in the alternative, fraud based on MBD's failure to disclose the City's plan for Libbytown redevelopment and the taking that it would entail.[4]

[¶9]  MBD filed a motion to dismiss the complaint for failure to state a claim under M.R. Civ. P. 12(b)(6), which, after briefing, the court granted.  Alrig timely appealed.  *See* M.R. App. P. 2B(c)(1).

---

[4] The complaint does not allege that the City has actually initiated a taking as to any portion of the property.

## II. DISCUSSION

[¶10]  We review the legal sufficiency of a complaint de novo, "examin[ing] the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43 (quotation marks omitted).  Dismissal is warranted when, taking the allegations in the complaint as true, "it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts" that might be proven in support of his claim.  *Id.* (quotation marks omitted).

A.   **Alrig's contract claim fails as a matter of law because the amendment unambiguously made the deposit nonrefundable except in the event of MBD's default.**

[¶11]  Alrig asserts that the amendment was ambiguous, defeating a motion to dismiss, because the amendment could be reasonably interpreted to have made the deposit nonrefundable with respect to the agreement's title review and due diligence contingency clauses in sections 5 and 6, but not the condemnation clause in section 16.

[¶12]  "Whether a contract is unambiguous and, if unambiguous, its interpretation are questions of law." *Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME

154, ¶ 8, 756 A.2d 515. "The interpretation of an unambiguous contract must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quotation marks omitted). "If the language of the contract is ambiguous, however, its interpretation is a question of fact for the factfinder." *Buck Constr. Co.*, 2000 ME 154, ¶ 8, 756 A.2d 515. "Language is considered to be ambiguous if it is reasonably susceptible to different interpretations." *Id.* ¶ 9.

[¶13] "[W]hen interpreting a contract, a court needs to look at the whole instrument" and construe it "to give force and effect to all of its provisions and not in a way that renders any of its provisions meaningless." *Am. Prot. Ins. Co.*, 2003 ME 6, ¶ 12, 814 A.2d 989 (quotation marks omitted). The court must construe the contract "in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others." *Id.* ¶ 11 (quotation marks omitted).

[¶14] Four provisions of the original agreement provided that Alrig could terminate the agreement and recover its deposit: section 5(b), the title

8

review contingency clause; section 6, the due diligence contingency clause; section 12(b), the seller's default clause; and section 16, the casualty and condemnation clause, which covers takings and under which Alrig in fact terminated the agreement. Paragraph one of the amendment waives, in their entirety, the title review and due diligence contingency clauses. Separately, paragraph two of the amendment provides that "the Deposit . . . shall be deemed nonrefundable . . . , except in the event of a default by the Seller pursuant to Section 12(b) of the Agreement."

[¶15] Contrary to Alrig's contention, the amendment is not reasonably susceptible to an interpretation that the paragraph making the deposit nonrefundable applies only to termination based on title and due diligence issues. Nothing in that paragraph states that it applies only to termination on those grounds. Rather, that paragraph's plain language generally makes the deposit nonrefundable, with a single, express exception for termination based on MBD's default. Because paragraph one of the amendment already eliminated two of the four grounds provided by the agreement for Alrig's recovery of the deposit, there would be no reason to repeat in the second paragraph of the amendment that the deposit was nonrefundable only in those two scenarios. If, moreover, the amendment made the deposit nonrefundable

only with respect to title review and due diligence issues, there would be no need for the clause excepting seller's default from the provision deeming the deposit nonrefundable.  To give effect to that exception, paragraph two must be read to apply more broadly; specifically, it must be read to apply to the eminent domain contingency, as that is the only remaining ground for Alrig's recovery of the deposit provided for in the agreement and not waived by paragraph one or excepted in paragraph two of the amendment.

[¶16]   Considering the amendment and agreement as a whole, the amendment unambiguously made the deposit nonrefundable when, as here, Alrig exercised its right to terminate the contract under Section 16.

**B.    Alrig's fraud claim fails as a matter of law because MBD did not actively conceal the City's anticipated condemnation.**

[¶17]  Fraud claims are subject to a heightened pleading standard: "the circumstances constituting fraud . . . shall be stated with particularity."  M.R. Civ. P. 9(b).  Intent, knowledge, and "other condition of mind," however, "may be averred generally."  *Id.*  When a fraud claim is based on silence as to a material fact, in addition to alleging that the defendant knew the material fact, "the plaintiff must [allege] either (1) active concealment of the truth, or (2) a specific relationship imposing on the defendant an affirmative duty to

10

disclose."[5] *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995); *see also Kezer v. Mark Stimson Assocs.*, 1999 ME 184, ¶ 23, 742 A.2d 898; *H.E.P. Dev. Grp., Inc. v. Nelson*, 606 A.2d 774, 775 (Me. 1992). Absent a showing of either active concealment or a special relationship, "even an intentional failure to disclose will not engender liability for fraud." Horton & McGehee, *Maine Civil Remedies* § 21-4(a)(1) at 399 (4th ed. 2004).

[¶18] Although a duty to disclose may arise by contract, the only disclosure provision regarding a taking in the parties' agreement required each party "to forward promptly to the other any notice of intent received pertaining to a taking of all or a portion of the Property." Alrig does not assert that MBD ever received such a notice. Moreover, that the contract limited MBD's contractual disclosure to forwarding any notice of intent it received negates any argument that the agreement imposed a broader duty to disclose information circulating in the community about the City's plans.

---

[5] Generally, the elements of fraud are "(1) that one party made a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing another party to act in reliance upon it; and (5) the other party justifiably relied upon the representation as true and acted upon it to its damage." *Flaherty v. Muther*, 2011 ME 32, ¶ 45, 17 A.3d 640 (alterations and quotation marks omitted). Given our ruling, we need not address MBD's argument that the language of the agreement precluded any justifiable reliance on any nondisclosure on its part.

[¶19]   Alrig also does not argue that a confidential or fiduciary relationship existed between the parties.  Absent such a relationship, mere nondisclosure is not actionable.  *E.g., Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995); *see also* 92 C.J.S. Vendor and Purchaser § 105 (2024); *Thompson v. Miles*, No. 1:10-cv-00234-NT, 2011 WL 7639708, at *11 (D. Me. Dec. 30, 2011) ("Under general principles of common law, sellers of real estate have no obligation to disclose property defects to buyers, and the Maine Law Court has generally been reluctant to extend that obligation." (citing *Kezer*, 1999 ME 184, ¶ 15, 742 A.2d 898)).

[¶20]  This leaves a claim that MBD actively concealed the City's planned Libbytown redevelopment.  "Active concealment . . . connotes steps taken by a defendant to hide the true state of affairs from the plaintiff."  *Kezer*, 1999 ME 184, ¶ 24, 742 A.2d 898 (quotation marks omitted).  Alrig contends that "active concealment" under Maine law extends to the "failure to tell" a purchaser about a material condition of property.  Even accepting for the purposes of argument that a city's plan to condemn property is a material condition of or defect in the property, this assertion would be incorrect.

[¶21]  Concealment does not include mere silence; it occurs only when the defendant takes an affirmative action to prevent the plaintiff from learning

a material fact. *See, e.g.*, *Stevens v. Bouchard*, 532 A.2d 1028, 1030 (Me. 1987); *H.E.P. Dev. Grp., Inc..*, 606 A.2d at 775; Restatement (Second) of Torts § 550 cmts. a, b (Am. L. Inst. 1977) (noting that concealment most commonly occurs "when the defendant actively conceals a defect or other disadvantage" or "successfully prevents the plaintiff from making an investigation that he would otherwise have made, and which, if made, would have disclosed the facts; or when the defendant frustrates an investigation"); Restatement (Second) of Contracts § 160 cmt. a (Am. L. Inst. 1981) ("Concealment is an affirmative act intended or known to be likely to keep another from learning of a fact of which he would otherwise have learned."); 92 C.J.S. Vendor and Purchaser § 104 (2024) ("Silence or nondisclosure, even as to material facts, does not . . . suffice in every circumstance to constitute or establish fraud. In the absence of any duty of disclosure, it does not. However, it is only silence that is permitted, and, if in addition to a party's silence, the party makes any statement tending affirmatively to suppress the truth, or to withdraw or distract the other party's attention from the facts, the concealment becomes fraudulent." (footnotes omitted)).

[¶22] To support its position, Alrig cites to the decisions *Fitzgerald* and *Kezer*. Neither stands for the proposition Alrig posits.

[¶23]   In *Fitzgerald*, the plaintiff entered an agreement to purchase a home after visiting the property multiple times accompanied by the defendants' agent, reviewing the purchase and sale agreement, and discussing with the agent discrepancies between the agreement and the agent's statements.  658 A.2d at 1067-68.  At the closing, after the plaintiff signed the agreement and paid for the property, the defendants informed her that the well water was contaminated; that they had long ago abandoned the well and used a neighbor's water source; and that, several days prior to the closing, the agent had reconnected the well and lab results had revealed that the water was still unsafe to drink.  *Id.* at 1068.  After a jury-waived trial, the court found that the facts established fraud and we affirmed.  *Id.* at 1068-69.  In *Kezer*, distinguishing *Fitzgerald*, we held that the *Kezer* plaintiffs could not survive a motion for summary judgment on their fraud claim because, contrary to the plaintiffs' claim that the defendants had concealed potential contamination of the water source at the residential property they purchased, the plaintiffs had not "presented any evidence that the . . . defendants took steps to conceal . . . that the [Department of Environmental Protection] had been testing in the neighborhood or to conceal that neighbors had complained that their wells were contaminated."  1999 ME 184, ¶ 25, 742 A.2d 898.

14

[¶24]  In short, the *Fitzgerald* defendants had hooked up their water supply to a noncontaminated source, affirmatively creating the appearance that the home had safe drinking water.  *Fitzgerald*, 658 A.2d at 1068-69; *see Kezer*, 1999 ME 184, ¶¶ 23-24, 742 A.2d 898.  In contrast, in *Kezer*, there was no active concealment because the defendants took no steps to hide the condition of contamination.  1999 ME 184, ¶¶ 24-25, 742 A.2d 898.  Here, Alrig has not alleged any affirmative action taken by MBD to conceal the City's planned Libbytown redevelopment.  Indeed, it is difficult to conceive how MBD could have concealed a public authority's community development plan.

### III.  CONCLUSION

[¶25]  The court did not err in its determination that Alrig failed to state a claim that MBD breached the contract or committed fraud by not informing Alrig that the City had plans that involved condemning a portion of the property subject to the parties' purchase and sale agreement.  *See Stevens*, 532 A.2d at 1030 ("In the absence of some special relationship existing between the buyer and seller of real estate, no duty to disclose defects in the premises exists and the doctrine of caveat emptor applies.")

[¶26]  Accordingly, we affirm the dismissal of Alrig's complaint.

The entry is:

Judgment affirmed.

---

Adam J. Shub, Esq. (orally), and Jonathan Mermin, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellant Alrig USA Acquisitions

James G. Monteleone, Esq. (orally), and Samuel X. Frank, Esq., Bernstein Shur, Portland, for appellee MBD Realty LLC

Cumberland County Superior Court docket number CV-2023-192
FOR CLERK REFERENCE ONLY