STATE OF MAINE
PENOBSCOT, ss

BETHANY and DEREK CARTER,

Plaintiffs

v.

HANK BARTLETT,

SHEILA BARTLETT,

TIM MADDEN,

and MADDEN HOME INSPECTION

Defendants

SUPERIOR COURT
Civil Action
Docket No. PENSC-CIV-2021-00012


**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
IN PART AND DENYING IN PART**

The matter pending before the Court is the motion for summary judgment filed by defendants Sheila and Hank Bartlett. The motion seeks a judgment in their favor on all counts brought against them by plaintiffs Derek and Bethany Carter's complaint.[1] The matter was previously stayed on the plaintiffs' motion to allow the plaintiffs' adequate time to use the discovery process to seek information relevant to the defendants' motion. Discovery in this case has since been completed, allowing the matter to proceed. A hearing on the motion for summary judgment was then held on November 3, 2022, where the parties presented their oral arguments to the Court. During that hearing, in addition to presenting their arguments, Plaintiffs also advised the Court that they had obtained the discovery materials they had previously been seeking from Defendants and that, having obtained the materials, they had decided not to supplement their response to the defendants' motion. This matter is now in order for decision.

---

[1] A default judgment has been entered against Tim Madden and Madden Home Inspection.

1

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that no genuine dispute exists concerning the material facts and the moving party demonstrates that it is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). A fact is "material" when it has the potential to affect the outcome of the case. *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. A "genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth." *Holmes v. E. Me. Med. Ctr.*, 2019 ME 84, ¶ 15, 208 A.3d 792. The Maine Rules of Civil Procedure establish a procedure through which the parties must present the facts of the case to the Court; these procedural rules are mainly found in M.R. Civ. P. 56(e)-(h) and require that the parties present their purported facts in numbered concise 'statements[2] of fact' with each statement supported by references to appropriate evidentiary materials. The Court considers the facts in the summary judgment record in the light most favorable to the non-moving party. *Cormier v. Genesis Healthcare LLC*, 2015 ME 161, ¶ 7, 129 A.3d 944. Any doubt as to whether a genuine issue of material fact exists "will be resolved against the movant, and the opposing party will be given the benefit of any inferences which might reasonably be drawn from the evidence." 3 Harvey & Merritt, *Maine Civil Practice* § 56:6 at 242 (3d, 2018-2019 ed.); *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683 (ambiguities in the record are resolved in favor of the nonmovant).

Where, as here, the moving party is a defendant seeking summary judgment on one or more of the plaintiff's causes of action, the initial burden rests on the defendant to show through a properly supported statement of facts and legal memorandum that the material facts of the case are not in genuine dispute and the plaintiff is unable to present a prima facie case. *Holmes*, 2019 ME 84, ¶ 16,

---

[2] These 'statements of fact' may include and are limited to the following documents: a supporting statement of material facts (S.M.F.) filed by the moving party, the nonmoving party's opposition to the moving party's statement of material facts (Opp. S.M.F.), the nonmoving party's statement of additional facts (S.A.F.) in opposition, and the moving party's reply to the nonmoving party's S.A.F. M.R. Civ. P. 56(h).

2

208 A.3d 792 (where the moving part is the defendant "the burden rests on that party to show that the evidence fails to establish a prima facie case for each element of the cause of action "); *Maine Civil Practice* § 56:6 at 242 ("The party seeking the summary judgment has the burden of demonstrating clearly that there is no genuine issue of material fact.") If the moving party's motion satisfies this initial burden, the nonmoving plaintiff must then respond to the motion by producing the evidence necessary to support "a prima facie case for each element of [his or her] cause[s] of action." *Lougee Conservancy*, 2012 ME 103, ¶ 12, 48 A.3d 774; M.R. Civ. P. 56(e). This standard requires "proof only of enough evidence to allow the [trier-of-fact] to infer the fact at issue and rule in the party's favor[,]" it does not require the evidence to be persuasive. *Lougee Conservancy*, 2012 ME 103, ¶ 12, 48 A.3d 774; *see also Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## II. FACTUAL REVIEW

On August 26, 2019, the Carters and Bartletts closed a real estate transaction wherein the Carters purchased a house located at 15 Lindsey Way, Hampden, Maine from the Bartletts. (Def.'s S.M.F. ¶ 1.) The real estate transaction was governed by a purchase and sale agreement that the parties had entered into on July 24, 2019. (Def.'s S.M.F. ¶¶ 3-9.)

Paragraph 12 of the parties' purchase and sale agreement is titled "Due Diligence" contains the following terms:

1. "Neither Seller nor Licensee makes any warranties regarding the condition, permitted used or value of Sellers' real or personal property, or any representations as to compliance with any federal, state or municipal codes, including, but not limited to, fire, life, safety, electrical and plumbing. Buyer is encouraged to seek information from professionals regarding any specific issue or concern."

3

2. "Buyer shall have ten days from the Effective Date of this Agreement to perform such due diligence investigations as Buyer deems necessary which may include, but are not limited to, any or all of the following: general building ... mold ..."

3. "If the result of any investigation is unsatisfactory to Buyer, Buyer may terminate this Agreement by notifying Seller in writing within the specified number of days, and any earnest money shall be returned to Buyer."

4. "If the result of any investigation is unsatisfactory to Buyer in Buyer's sole discretion, and Buyer wishes to pursue remedies other than voiding the Agreement, Buyer must do so to full resolution within the time period set forth above; otherwise this contingency is waived."

(Def.'s S.M.F. ¶¶ 4-6.) Paragraphs 18, 25, and 26 of the purchase and sale agreement contain additional terms, which are set forth below:

¶ 18: "PRIOR STATEMENTS: Any representations, statements and agreements are not valid unless contained herein. This Agreement completely expresses the obligations of the parties and may only be amended in writing, signed by both parties."

¶ 25: "ADDENDA: ... The Property Disclosure Form is not an addendum and not part of this Agreement."

¶ 26: "OTHER CONDITIONS: Seller is to have the home professionally cleaned, prior to closing."

(Def.'s S.M.F. ¶¶ 7-9.)

Prior to the closing of the real estate transaction, the Bartletts listed the property for sale through the real estate agency, Better Homes & Gardens Real Estate. (Pl.'s S.A.F. ¶¶ 1-2.) The real

4

estate listing described the property's foundation as "other; poured concrete; slab." (*Id.* ¶ 3.)[3] At the time they listed the property, the realtor informed the Bartletts that the property likely had a "concrete/wooden foundation." (*Id.* ¶ 4.)

Mr. Derek Carter was not aware that the property had wood in its foundation when he purchased the property from the Bartletts. (*Id.* ¶ 6.) He laments that, had he known the foundation contained wood, he would not have completed the transaction, as he has been told that buildings with wooden foundations generally only last 80 years. (*Id.*)

After purchasing the house, Derek Carter removed some floorboards and sheetrock in the basement and found black mold on and behind them. (Pl.'s S.A.F. ¶¶ 9-10, 12-13.) While cleaning in the basement, he noticed that some of the sheetrock walls were wet. (*Id.* ¶ 13.) The wetness prompted him to remove the sheetrock, which then led to his discovery of the mold. (*Id.* ¶ 13.) Mr. Carter also states that in the house's basement, which has red walls, there was a sheetrock wall partially spray painted black. (*Id.* ¶ 14.) When Mr. Carter removed the wall that had been painted black, he found "most of the worst mold growth." (*Id.*) Mr. Carter believes that "the black paint was meant to cover up the black mold on the walls and behind it." (*Id.*) Additionally, Mr. Carter states that, after purchasing the house, when he was inspecting the basement bathroom, he found some pieces of drywall near the bathroom's sink that had been removed from the basement's walls and which had black mold on them. (*Id.* ¶¶ 16-17; Pl.'s Opp. S.M.F. ¶ 14.) Mr. Carter believes that those pieces of drywall had been cut out of the baseboard area near the basement bathroom's sink. (Pl.'s S.A.F. ¶ 16.)

---

[3] The record supplied by the parties includes some statements of fact where the parties did not appropriately cite to the central documents in this case—the real estate listing, the purchase and sale agreement, and the property disclosure statement. However, the Court is not inclined to deprive a party of his or her day in Court due to such procedural errors under the circumstances of this case. Both parties extensively reference the documents in their arguments, the documents were known to the parties from the very onset of the case (and before), there is no dispute to the authenticity or relevance of the documents, and therefore, in the interest of justice, such statements relating to the real estate listing, purchase and sale agreement, and the property disclosure statement are considered by the Court for purposes of acting on the Defendants' Motion for Summary Judgment. M.R. Civ. P. 1.

5

Mr. Carter found moisture resistant drywall under and around the same basement bathroom sink from the area where he believes the pieces of mold infected drywall had been removed. (*Id.* ¶ 17.) He additionally states that he found mold growth under that basement bathroom sink. (*Id.* ¶¶ 15-17.) The property disclosure statement, the real estate listing, nor the parties' purchase and sale agreement stated that the property's basement was affected by mold or that the property has a wooden foundation. (*Id.* ¶ 24.)

The Bartletts were not the first owners of 15 Lindsey Way. Prior to the Bartletts, 15 Lindsey Way was owned by Hal and Wanda Whittet and prior to that by Delahanty. On October 29, 2010, Delahanty sold the house to the Whittets. (*Id.* ¶ 29). The Whittets are related to Ms. Sheila Bartlett. (*Id.* ¶ 30.) After the sale on October 29, 2010, Ms. Bartlett started living at the property. (*Id.* ¶ 29.) The Whittets sold the house to the Bartletts on May 3, 2016. (*Id.* ¶ 35.)

When Delahanty owned 15 Lindsey Way, he was aware that the property had wood in its foundation. (*Id.* ¶ 31.) Delahanty told the Whittets that the property had wood in its foundation when he sold it to them. (*Id.* ¶ 31.) Also, when he still owned the property, Delahanty hired contractors to paint some walls in the basement bathroom and do some other work in the bathroom. (*Id.* ¶ 19.) He did not have any drywall work done in the basement or paint any walls black. (*Id.* ¶¶ 18, 20.)

Before purchasing 15 Lindsey Way, Mr. Carter noticed a "pungent smell" in the basement. (*Id.* ¶ 21.) He believed the smell came from cat litter boxes that the Bartletts had in the basement. (*Id.* ¶ 22.) Because of that smell, the Carters insisted that the Bartletts have the basement professionally cleaned before they closed the transaction and added the cleaning as an additional term to their purchase and sale agreement. (*Id.* ¶ 21, ¶ 27.) The Bartletts had the basement cleaned[4] by a professional cleaning company prior to the transaction's closing. (*Id.* ¶ 22-23.) However, after the

---

[4] The Carters further asserted in ¶ 23 of their S.A.F. that the professional cleaners hired by the Bartletts recommended that the Bartletts have additional cleaning done. However, the Court does not consider that statement because it was not supported by references to admissible evidence. *See* M.R. Evid. 802.

6

parties completed their transaction, the pungent smell remained, and the miasma would permeate the upstairs of the house. (*Id.* ¶ 28.)

The Carters had 15 Lindsey Way inspected by a professional home inspector on August 1, 2019, before the basement was professionally cleaned. (*Id.* ¶ 26.) The home inspector did not report any mold or wetness in the basement. (*Id.*)

After closing the transaction for 15 Lindsey Way and finding the mold in the basement, Derek Carter purchased building materials and performed much of the work necessary to remove the mold. (*Id.* ¶ 11.) The Carters believe that the cost of "correcting" the house's foundation would be between $40,000 and $50,000. (*Id.* ¶ 25.)

## III.  ANALYSIS

After having reviewed the above facts, the applicable law, and the parties' arguments, the Court is satisfied that Defendants have met their initial burden on this motion for summary judgment. The question for the Court now is whether Plaintiffs have presented sufficient evidence to form a prima facie case for trial on each count of their complaint against the Bartletts (i.e., each of their causes of action). The Court will analyze each count in turn.

### A.  Fraud (Count XI[5])

Plaintiffs' fraud claim relies upon a fraudulent concealment theory. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 15-18.) To set forth a prima facie case of fraudulent misrepresentation by concealment, Plaintiffs must produce "clear and convincing evidence" of the following elements:

> (1) a failure to disclose, (2) a material fact, (3) when a legal or equitable duty to disclose exists, (4) with the intention of inducing another to act or refrain from acting in reliance on the non-disclosure, and (5) the plaintiff in fact relied upon the non-disclosure to the plaintiff's detriment.

---

[5] Plaintiffs mislabeled this count with the roman numerals "XII" on the complaint (the complaint contains only eleven counts).

*Picher v. Roman Catholic Bishop of Portland*, 2013 ME 99, ¶ 3, 82 A.3d 101. To prove a "failure to disclose," plaintiffs must show that the defendant was aware of the fact that he or she is accused of concealing. *Id.* The fraudulent concealment tort also requires proof of justifiable reliance, which, in this context, means that "[w]hen there has been active concealment of a material fact, the plaintiff must justifiably rely on the omission of the material fact." *Kezer v. Mark Stimson Assocs.*, 1999 ME 184, ¶ 26, 742 A.2d 898. In regard to the duty element, Maine's Supreme Judicial Court has held that, under the common law, "sellers of real estate have no obligation to disclose property defects to buyers," *Kezer*, 1999 ME 184, ¶ 15, 742 A.2d 898,[6] but proof that a real estate seller engaged in active concealment of material facts to mislead the buyer is grounds to impose a duty to disclose on the seller. *See Eaton v. Sontag*, 387 A.2d 33, 38 (Me. 1978) ("It is not fraud for one party to say nothing respecting any particular aspect of the subject property for sale where no confidential or fiduciary relation exists and *where no false statement or acts to mislead the other are made.*") (emphasis added). To establish that a defendant real estate seller actively concealed material facts in a transaction, a plaintiff buyer must show that the seller took steps "to hide the true state of affairs from the plaintiff." *Pleasantdale Condos., LLC v. Wakefield*, 37 F.4th 728, 735 (1st Cir. 2022) (applying Maine Law and quoting *Kezer v. Mark Stimson Assocs.*, 1999 ME 184, ¶ 24, 742 A.2d 898). Also of particular importance, in Maine, the doctrine of caveat emptor applies[7] to real estate purchases and purchasers of real estate are charged with an obligation "to inspect the physical condition of the property" being purchased. 33 M.R.S. § 176(2) (titled "purchaser's rights and duties").

In this case, Plaintiffs charge that defendants "Sheila and Hank Bartlett either personally or through their agent, . . ., failed to disclose the full structural details of the foundation,

---

[6] *See also Stevens v. Bouchard*, 532 A.2d 1028, 1030 (Me. 1987) ("Under Maine law, the Bouchards' failure to inform the plaintiffs of the leaking roof is not actionable. In the absence of some special relationship existing between the buyer and seller of real estate, no duty to disclose defects in the premises exists and the doctrine of caveat emptor applies.)

[7] *Stevens*, 532 A.2d 1028, 1030 (Me. 1987) (the doctrine of caveat emptor applies to claims of fraud in the context of real estate transactions.)

8

moisture/drainage, or mold problems with the real estate prior to sale, either through the mandated property disclosure statement, the Seller's Listing, or orally." (Pl.'s Opp'n to Def.'s Mot. Summ. J. 15-16.) They claim that Defendants actively concealed the true conditions of the property by: (1) painting a mold affected basement wall black; (2) replacing mold affected pieces of drywall with mold resistant drywall, (3) passing the smell in the basement off as soiled cat litter, (4) ambiguously describing the house's wooden foundation as "other" in the real estate listing, and (5), in an ambiguous way, telling Plaintiffs that the basement had been professionally cleaned prior to the closing. (*Id.* 16.)

The facts in the summary judgment record provide that the real estate listing Defendants used to advertise their property stated to Plaintiffs and other potential buyers described the property's foundation as "other; poured concrete; slab." However, based on the facts provided by Plaintiffs, taken in the light favorable to them, the property's foundation is in fact predominantly wood. (*See* Pl.'s S.A.F. ¶¶ 4-6.) The record also includes facts indicating that Defendants were informed that the property's foundation is, at least partially, made of wood, rather than concrete. (Pl.'s S.A.F. ¶ 4.) The record further provides that Defendants did not reveal the fact that the property's foundation contained wood to Plaintiffs at any time prior to the conclusion of their transaction. (Pl.'s S.A.F. ¶ 6.)

The above facts are sufficient at this stage to set forth a prima facie case of fraudulent misrepresentation by concealment. It is indisputable that in sales of a residential property the construction of the building's foundation is a material fact in the transaction. A reasonable jury could look to the facts regarding Defendants' knowledge of the partially wooden foundation, Defendants nondisclosure of that knowledge, and description of the property as "other; poured concrete; slab" in the real estate listing and find that Defendants failed to disclose that fact. Defendants argue that the description of the property as "other; poured concrete; slab" was not a misrepresentation, apparently because it contained the word "other." However, a reasonable jury could easily look to that description and find that the word "other" described the foundation as being of mixed poured

9

concrete and slab, rather than as a reference to some other non-concrete material. Given that the failure to disclose occurred in context of a real estate transaction for a substantial sum of money, a reasonable jury could infer that Defendants' failed to disclose the foundation's partially wooden construction and described the foundation as "other; poured concrete; slab" with the intention of inducing potential buyers such as Plaintiffs into believing that the foundation was made of concrete (poured, slab, or otherwise) and to purchase the property in reliance on that belief. Defendants' description of the property in the real estate listing as "other; poured concrete; slab" also provides a reasonable factual basis for a jury to conclude that Defendants engaged in active concealment of the true construction of the property's foundation. Should the jury find that Defendants engaged in active concealment, the Court would have grounds to impose a duty to disclose on Defendants. *See Eaton*, 387 A.2d at 38 ("It is not fraud for one party to say nothing respecting any particular aspect of the subject property for sale where no confidential or fiduciary relation exists and *where no false statement or acts to mislead the other are made*.") (emphasis added). A reasonable jury could find that Plaintiffs' justifiably relied upon Defendants' description of the property, which did not indicate that any portion of the foundation was wooden, to their detriment. Because the facts described above regarding the property's foundation and the parties' conduct, are sufficient to set forth a prima facie case of fraud, it is unnecessary for the Court, for purposes of this motion for summary judgment, to analyze Plaintiffs other claims regarding Defendants' nondisclosures about the mold and cleaning.

The same facts described above also provide sufficient proof to support a prima facie case that the disclaimer of reliance clause that Defendants point to in paragraph 12 of the parties' purchase and sale agreement is vitiated (nullified or made unenforceable) by Defendants' fraud in the inducement of the contract. To establish fraud in the inducement of the contract, the party seeking to vitiate the effect of the contract term must show:

(1) A party made a false representation,
(2) The representation was of a material fact,

10

(3) The representation was made with knowledge of its falsity or in reckless disregard of whether it was true or false,

(4) The representation was made for the purpose of inducing another party to act in reliance upon it, and

(5) The other party justifiably relied upon the representation as true and acted upon it to the party's damage

*Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280. The only element of this contract defense that the Court has not already discussed in its analysis of the fraud tort is the third element.

The Court has determined that Plaintiffs have met their burden of producing prima facie proof that Defendants falsely represented the foundation's construction as concrete as opposed to wood and concrete with knowledge of its falsity through paragraph 4 of their statement of additional facts. Paragraph four asserts based on Defendants' response to one of Plaintiffs' interrogatories that Defendants were informed by their realtor at the time they published their real estate listing that the property they had listed for sale "likely had a concrete/wooden foundation." (Pl.'s S.A.F. ¶ 4.) If that assertion is proved at trial along with the fact that Defendants concluded the transaction without informing Plaintiffs of the partially wooden foundation, the jury would have a reasonable basis to find that Defendants misrepresented the true composition of the property's foundation "with knowledge of its falsity." Plaintiffs' have therefore met their burden of providing prima facie proof in this summary judgment proceeding that the disclaimer of reliance clause in their contract with Defendants is unenforceable due to fraud in the inducement.

For all of the reasons discussed above, the Court concludes that Plaintiffs have produced sufficient facts to set forth a prima facie case of all the essential elements of fraud by concealment. The Court therefore denies Defendants' motion for summary judgment on count XI (fraud).

## B. Negligent Misrepresentation (Count VIII)

"Negligent misrepresentation is a vehicle for asserting claims of economic harm." *Langevin v. Allstate Ins. Co.*, 2013 ME 55, ¶ 11, 66 A.3d 585. Maine's Law Court has defined the tort of negligent

11

misrepresentation by adopting the definition provided by the Restatement (Second) of Torts § 552(1), which states as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (adopting the Restatement (Second)'s definition). The matters of "whether [the defendant] made a misrepresentation and whether [the plaintiff] justifiably relied on a misrepresentation are questions of fact." *St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 19, 55 A.3d 443. "Additionally, liability only attaches if, when communicating the information, the party making the alleged misrepresentation fails to exercise the care or competence of a reasonable person under like circumstances, an inquiry that is likewise for the fact-finder." *Id.* Under Maine law, "silence rises to the level of supplying false information when such failure to disclose constitutes breach of a statutory duty." Simmons, Zillman & Furbish, *Maine Tort Law* § 11.08 at 11-18 (2018 ed.); *Binette v. Dyler Library Ass'n*, 688 A.2d 898, 903 (Me. 1996). The purported misrepresentations that form the basis of Plaintiffs' claim here are that the Defendants' supplied false information that "there was no mold or moisture in the basement they were aware of, that a proper cleaning of the basement had occurred without reservation, and being misleading about the foundation material." (Pl.'s Opp'n to Def.'s Mot. Summ. J. 13.)

Viewed in the light favorable to Plaintiffs as the non-moving party, the facts in the summary judgment record indicate that triable issues exist as to all of the above elements of the tort. The record contains facts indicating that Defendants described the foundation of the property in the real estate listing as "other; poured concrete;[8] slab." Although Defendants argue that the description was not a

---

[8] At this juncture, the Court views Defendants decision to list the property with that description as an affirmative act and not merely the omission of information that the foundation included wood.

12

misrepresentation because the word "other" can be taken to mean some construction material that is not concrete, a reasonable jury could also take that description to mean that the property's foundation was wholly concrete and consisted of some combination of poured, and slab, and not some other construction material. It is undisputed in the record that the property's foundation is not wholly concrete but, instead, includes some significant amount of wood construction. The record further provides facts indicating that Defendants knew of that wooden construction and did not disclose that material fact to Plaintiffs during their real estate transaction. These facts supply sufficient evidence to support a prima facie case, at this stage, that Defendants supplied false information (i.e., that the foundation was wholly concrete) for "the guidance of [Plaintiffs]" in their real estate transaction. Based on the facts indicating that Defendants were informed by their realtor that their property "likely had a concrete/wooden foundation" and did not modify the listing or otherwise communicate to Plaintiffs that the foundation contained wood, a jury could also reasonably find that Defendants failed to exercise reasonable care or competence in communicating the information about the foundation to Plaintiffs in the transaction. A jury could reasonably find that Plaintiffs justifiably relied on the information provided by Defendants. The Court is also satisfied that a jury could reasonably find that Plaintiffs have suffered some pecuniary loss. The Court therefore concludes that Plaintiffs have set forth sufficient evidence to meet their burden of presenting a prima facie case of negligent misrepresentation.[9]

Defendants argue in opposition that 33 M.R.S. § 176 and the economic loss doctrine bar Plaintiffs cause of action for this tort; however, neither of those arguments are persuasive at this juncture. As mentioned previously, 33 M.R.S. § 176, provides that, in residential real estate transactions, purchasers of real estate have an "obligation" to "inspect the physical condition of the

---

[9] Because the Court has determined that Plaintiffs' statements of fact concerning the foundation of the property are sufficient to support a prima facie case of the tort, the Court does not delve into Plaintiffs' other claims regarding Defendants' representations concerning the mold and cleaning.

13

property." There is no genuine dispute in the record that Plaintiffs had 15 Lindsey Way professionally inspected by a home inspector prior to their purchase. From those facts, a reasonable jury could find that Plaintiffs discharged their duty under 33 M.R.S. § 176 "to inspect the physical condition of the property."

As to Defendants' argument regarding the economic loss doctrine, Maine's Law Court defined the doctrine in the products liability case *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267 (Me. 1995), as a rule that prevents recovery in tort for an "economic loss," defining "economic loss" as "damages for inadequate value, costs of repair and replacement of defective product, or consequent loss of profits--without any claim of personal injury or damage to other property," and stated that the underlying rationale of the economic loss rule "is that damage to a product itself means simply that the product has not met the customer's expectations, or, in other words, that the customer has received insufficient product value." *Id.* at 269-71, 270 n. 4. While Maine's Law Court has applied the doctrine in products liability suits and some Maine Superior Courts have extended the doctrine to apply to claims based on the performance of service contracts, *See Guerretie v. Dyer*, YORSC-CV-13-0180, 2014 Me. Super. LEXIS 79, at *4-5 (July 9, 2014) (discussing the economic loss doctrine and applying it to bar a plaintiff's "negligent misrepresentation/negligence" claim seeking to recover "compensation for a purely economic loss in the context of service contract"), Defendants have not identified any Maine cases that have applied the economic loss doctrine to a negligent misrepresentation claim based on an alleged misrepresentation in the context of a sale of real estate. (Def.'s Mot. Summ. J. 6.) Moreover, extending the application of the doctrine to the facts of this case would seem to be directly contradictory to the Law Court's description of the negligent misrepresentation tort in *Langevin* "as [a] vehicle for asserting claims of economic harm," and determination in that case that a plaintiff who was awarded a judgment against a seller of real estate based on negligent misrepresentations made by the seller regarding the

14

property "could recover their loss of investment" against the seller. 2013 ME 55, ¶ 11, 66 A.3d 585 (but holding that such damages were not recoverable from seller's insurer through a reach and apply action under the terms of the seller's insurance policy). The Court therefore declines to extend the economic loss doctrine to Plaintiffs' claim against Defendants in this case.

Defendants also argue that they cannot be liable for negligent misrepresentation because there is no liability under the tort for 'acts of omission' unless a statutory duty is imposed. However, in regard to the foundation, Defendants are accused of making an affirmative misrepresentation (describing the foundation as some kind of concrete rather than wood). Based on the facts previously discussed in this Order indicating that the house's foundation is made predominantly out of wood, a genuine issue of material fact exists as to whether Defendants' description of the foundation as "other; poured concrete; slab" was an affirmative misrepresentation.

For all of the reasons discussed above, the Court denies Defendants' motion for summary judgment on count VIII (negligent misrepresentation).[10]

## C. Negligence (Count VI)

Negligence has four elements: "(1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 16, 60 A.3d 759.

In count VI of their complaint, Plaintiffs allege that Defendants "had a duty to the Plaintiffs to hire a professional cleaning company to perform the work consistent with their agreement." (Compl. ¶ 86.) They then allege that Defendants breached that duty by "putting a financial cap on the professional cleaning company" and "by withholding information provided by the professional

---

[10] The Court rejects Defendants additional argument that paragraph 12 of the purchase and sale agreement, the disclaimer of reliance clause, of the contract bars Plaintiffs' claim because the Court has determined that Plaintiffs have presented a prima facie case that paragraph 12 of the contract is vitiated by fraud in the inducement of the contract. (See section III(A) of this Order).

15

cleaning company that additional cleaning would be needed in the basement to correct issues there, so as to cause continuing problems to the residence after the Plaintiffs' purchase." (*Id.* ¶ 87.) However, Plaintiffs statements of fact responding to Defendants' motion do not offer prima facie support for either of these allegations. Plaintiffs base their breach allegations on S.A.F. ¶ 23 in which they assert that Mr. Carter contacted the cleaning company that Defendants hired to clean the basement and that someone from the cleaning company told him that the company recommended that Defendants purchase additional cleaning services and that Defendants declined the additional cleaning; in the same paragraph, Plaintiffs further assert that Defendants did not tell them that they declined the recommended additional cleaning prior to the closing. However, the only reference Plaintiffs provided in support of those statements was a citation to Mr. Carter's affidavit where he relates what he purports the cleaning company told him. Because the cited portions of Mr. Carter's affidavit provide only inadmissible hearsay as support for the above statements, the Court does not consider the facts set forth in S.A.F. ¶ 23. *See* M.R. Evid. 801-805; *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653 (in summary judgment proceedings, proffered facts must be supported by references to "evidence of a quality that could be admissible at trial."). Moreover, the statements in Mr. Carter's affidavit would not support the assertion that Defendants placed a price cap on the cleaning services, nor that Defendants declined the purported additional recommended cleaning to "cause continuing problems to the residence after Plaintiffs' purchase." Accordingly, the Court finds that Plaintiffs have not produced sufficient evidence to form a prima facie case that Defendants breached a duty to Plaintiffs to hire a professional cleaning company to clean the basement. Defendants' motion for summary judgment on count VI (negligence) is granted.

### D. Breach of Contract (Count III)

To hold a defendant liable for breach of contract, a plaintiff must demonstrate that the parties formed a legally enforceable contract; if a contract was formed, the plaintiff must then "demonstrate

16

that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages." *Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 17, 226 A.3d 227. In this matter, the parties agree that they formed a legally enforceable contract for the sale of 15 Lindsey Way. (Def.'s S.M.F. ¶¶ 3-8; Pl.'s Opp. S.M.F. ¶¶ 2-8.) Therefore, the Court's analysis will focus on whether Plaintiffs' have set forth prima facie proof of the breach, causation, and damages elements. A breach occurs when a party to the contract fails to perform an obligation under the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 235(2) ("When performance of a duty under a contract is due, any non-performance is a breach."); *see also id.* § 235 cmt. b ("When performance is due, however, anything short of full performance is a breach, even if the party who does not fully perform was not at fault and even if the defect in his performance was not substantial...Non-performance includes defective performance as well as an absence of performance"). "[T]he question of whether there has been a breach of contract is a question of fact[.]" *Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088.

The contract dispute here concerns whether Defendants breached the term in paragraph 26 of that contract obligating Defendants to "have the home professionally cleaned, prior to closing." (Pl.'s Opp'n to Def.'s Summ. J. 10-12.) Plaintiffs also contend that Defendants' breached material terms of the contract by misrepresenting the conditions of the property by failing to disclose that the basement of the property was affected by mold and that the foundation contains wood. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 10-11.) However, Plaintiffs' claims regarding Defendants' purported misrepresentations, deceptions, and failures to disclose are all claims that sound in tort rather than contract and, for that reason, are not remediable under a breach of contract theory. *See Davis v. R C & Sons Paving, Inc.*, 2011 ME 88, ¶¶ 16-17, 26 A.3d 787 (holding that a plaintiff's personal injury suit against a snow removal contractor did not raise a cognizable contract claim where the plaintiff brought negligence claims premised on the snow removal contractors purported negligence in failing to treat

17

ice in a parking lot at the plaintiff's place of employment);[11] *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 938 (Me. 1982) (tort obligations and contractual obligations "create separate and distinct predicates of liability."). Accordingly, the remaining part of the Court's analysis in this section will focus on whether a triable issue of fact exists as to whether Defendants breached the cleaning provision of the contract (paragraph 26 of the parties' "Purchase and Sale Agreement").

After reviewing the parties' statements of fact, the Court has determined that Plaintiffs have set forth sufficient facts to generate a prima facie case of contract breach based on Defendants purported defective performance of their obligation to have the basement professionally cleaned. The parties' statements of fact provide that, before the transaction closed, Plaintiffs visited the property and noticed a "pungent smell in the basement." (Pl.'s S.A.F. ¶ 21.) Because of that smell, Plaintiffs insisted that the contract include an additional provision obligating Defendants to have the property professionally cleaned prior to closing. (*Id.* ¶¶ 21, 27.) The parties agree that the Defendants hired a professional cleaning company to clean the property and that the company cleaned the property on

---

[11] The Court finds the following portion of *Davis v. R. C & Sons Paving* to be instructive in this matter:

> A clear distinction must be drawn "between actions which sound in contract and those which sound in tort." *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 938 (Me. 1982) (noting that tort obligations and contractual obligations "create separate and distinct predicates of liability"). In contract actions, "[c]ontractual recovery is predicated in the first instance upon a consensual obligation between two or more parties." *Id.* On the other hand, tort recovery "does not rest upon a consensual relationship between the parties":
>
> > [I]n tort, liability is grounded upon the status relationship between the parties. The status relationship which constitutes the predicate for tort recovery is entirely independent from and, indeed, foreign to any notions of the consensual features which form the basis of contractual liability.
>
> *Id.* (citation omitted); *see also McNally v. Nicholson Mfg. Co.*, 313 A.2d 913, 923 (Me. 1973) ("In tort, special consent, or contract, arrangements are not of the essence of, but are rather coincidental to, the origin of duties." (quotation marks omitted)); W. Page Keeton et al., *Prosser & Keeton on Torts* § 92, at 655-56 (W. Page Keeton ed., 5th ed. 1984). A tort duty involves "the question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 261 (Me. 1988) (quotation marks omitted).

*Davis*, 2011 ME 88, ¶¶ 16-17, 26 A.3d 787.

18

August 20, 2019. (Def.'s S.M.F. ¶ 10; Pl.'s Opp. S.M.F. ¶ 10.) However, after Plaintiffs moved in, the "pungent smell" remained, and the miasma permeated throughout the property. (Pl.'s S.A.F. ¶ 28.) Plaintiffs' statements of fact further provide that, after closing, cut-out pieces of mold affected drywall remained near the basement's bathroom sink. (*Id.* ¶ 16.) The Court concludes that these facts are sufficient to generate a triable issue as to whether Defendants' performance of their contractual obligation to clean the property was defective and thus, a breach of the parties' contract. From the same facts, the Court is also satisfied that Plaintiffs' have shown that the cleaning provision in paragraph 26 is a material term of the contract and satisfied that a reasonable jury could infer that Defendants' purported breach caused Plaintiffs to suffer damages.[12]

Defendants' motion for summary judgment on count III (breach of contract) is denied, as Plaintiffs' have set forth sufficient facts to meet their burden of production as to all of the essential elements of their cause of action.

### E. Unfair Trade Practices (Count I)

Maine's Unfair Trade Practices Act (UTPA), 5 M.R.S. §§ 205-A — 214, declares "deceptive acts or practices in the conduct of any trade or commerce" unlawful. 5 M.R.S. § 207. The UTPA provides a private remedy for such acts or practices in § 213, which provides the following.

> **1. Court action.** Any person who purchase or lease goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2 may bring an action either in the Superior Court or District Court for actual damages, restitution and for such

---

[12]The Court has determined that paragraph 12 of the parties' contract, which provides that Defendants do not "make[ ] any warranties regarding the condition, permitted use or value of the Seller's real or personal property, or any representations as to compliance with any federal, state or municipal codes, . . ." does not release Defendants from claims of liability concerning the cleaning provision in paragraph 26. The disclaimers in paragraph 12 do not reference the cleaning term in paragraph 26. In addition, the cleaning provision appears later in the agreement, is marked as an additional "other condition" of the contract and is phrased in terms of an affirmative obligation to perform on the part of the defendants. (Def.'s S.M.F. ¶¶ 4-6, 9.) All of those facts indicate to the Court that the scope of the disclaimer does not extend to the cleaning term in paragraph 26 of the agreement. (The Court does not find paragraph 12 to be ambiguous on the subject).

19

other equitable relief, including an injunction, as the court determines to be necessary and proper. There is a right to trial by jury in any action brought in Superior Court under this section.

5 M.R.S. § 213. The Attorney General has not promulgated any regulations that are relevant to Plaintiffs' claim. Thus, to obtain a remedy through § 213(1), Plaintiffs' must prove that Defendants engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Brown v. Compass Harbor Vill. Condo. Ass'n*, 2020 ME 44, ¶ 13, 229 A.3d 158, 5 M.R.S. §§ 207, 213. "A transaction occurs in the conduct of trade or commerce only if it takes place in a business context, as opposed to one done on a private, nonprofessional basis." *Brown*, 2020 ME 44, ¶ 15, 229 A.3d 158; *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 907 (Me. 1996). "Whether a transaction occurred in the conduct of trade or commerce is a question of law" for the Court. *Brown*, 2020 ME 44, ¶ 15, 229 A.3d 158. "Factors relevant to whether a transaction took place in a business context include the nature of the transaction, the character of the parties, the activities engaged in by the parties, whether the parties have engaged in similar activities in the past, whether the transaction is motivated by business as opposed to personal reasons, and whether the parties played an active part in the transaction." *Binette*, 688 A.2d at 907.

The deceptive/unfair trade acts Plaintiffs allege Defendants committed in their real estate transaction are: (1) not having 15 Lindsey Way properly cleaned under their purchase and sale agreement and not telling Plaintiffs before closing; (2) misrepresenting or withholding information about the mold in the basement; and (3) misrepresenting or withholding information about the construction of the foundation. (Pl.'s Compl. ¶¶ 56-58.) To demonstrate that Plaintiffs' purchase of 15 Lindsey Way occurred in "a business context, as opposed to one done on a private, nonprofessional basis," Plaintiffs point to defendant Sheila Bartlett's answer to one of Plaintiffs' interrogatories where she answered, "I had an eviction action against a tenant." (Pl.'s Opp. S.M.F. ¶ 2.) In that same statement, Plaintiffs further noted that, at the time they filed their response to Defendants' S.M.F.,

20

they lacked adequate information to respond to Defendants' denial that the parties' real estate transaction was part of a business or trade. (*Id.*) Plaintiffs' also point to the fact that Defendants hired a professional real estate broker to act as their agent in the transaction. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 9.)

Given the facts set forth in Plaintiffs' and Defendants' statements of fact, the Court has concluded that Plaintiffs' have not met their burden of showing that their purchase of 15 Lindsey Way from Defendants occurred in "a business context." The fact that on one occasion, sometime in the past, defendant Sheila Bartlett had a tenant does not generate a reasonable inference that Defendants' sale of 15 Lindsey Way was part of some business or trade on the part of the Defendants. As to their contention that they lacked adequate information to deny Defendants' assertion that the transaction was not conducted as part of a business, the Court stayed the motion on Plaintiffs' request to provide them adequate time to use the discovery process to probe the matter further—discovery has now been completed and Plaintiffs chose not to supplement their statements of fact with any further information.

Additionally, the fact that Defendants hired a professional real estate broker to act as their agent in the transaction and complete tasks such as advertising the property and communicating with potential buyers is strongly indicative that Defendants' sale of the property to Plaintiffs was "done on a private, nonprofessional basis" rather than a transaction done as part of a business or trade. There is no indication in the record that Defendants' sale was "motivated by business as opposed to personal reasons" and no indication that Defendants were more actively involved in the transaction than is typical of a private sale of a residence from one homeowner to another. Based on the facts presented, it appears to the Court that the parties' real estate transaction was nothing more than an isolated, private, nonprofessional sale of a house from one homeowner to another conducted with the aid of professional real estate agents. Accordingly, the Court has concluded that Plaintiffs have not met their

21

burden on this motion of showing that their transaction for 15 Lindsey Way "occurred in a business context, as opposed to one done on a private, nonprofessional basis," an essential element of their cause of action. *See Binette*, 688 A.2d at 907.

The Court grants Defendants' motion for summary judgment on count I (UTPA), as Plaintiffs' have not met their burden of showing that their purchase of 15 Lindsey Way from Defendants' "occurred in a business context, as opposed to one done on a private, nonprofessional basis." *See Binette*, 688 A.2d at 907.

### F. Unjust Enrichment (Count X)

"Unjust enrichment" is an equitable claim that seeks "recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay, . . ." *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269. If a contractual relationship exists between the parties regarding the matter in dispute, "that relationship precludes the availability of any recovery in equity for unjust enrichment." *York Cty. v. PropertyInfo Corp.*, 2019 ME 12, ¶ 26, 200 A.3d 803. Plaintiffs have admitted that a contractual relationship exists between themselves and defendants regarding the sale of 15 Lindsey Way. (Def.'s S.M.F. ¶¶ 3-9; Pl.'s Opp. S.M.F. ¶¶ 3-9.) That contractual relationship precludes Plaintiffs from obtaining a remedy through an unjust enrichment theory. The Court grants Defendants' motion for summary judgment on count X (unjust enrichment).

### G. Promissory Estoppel (Count V)

Plaintiffs' promissory estoppel claim is based on their allegation that a contract exists between themselves and Defendants wherein Defendants promised to Plaintiffs that 15 Lindsey Way "would be professionally cleaned prior to the closing, as referenced in the Purchase & Sale Agreement" and that Defendants breached that promise. (Compl. ¶¶ 78-84.) "Promissory estoppel is a contract

22

doctrine invoked to enforce promises which are otherwise unenforceable so as to avoid injustice." *Cottle Enters. v. Town of Farmington*, 1997 ME 78, ¶ 17 n.6, 693 A.2d 330; *see also Harvey v. Dow*, 2008 ME 192, ¶ 11, 962 A.2d 322; *Daigle Commercial Group, Inc. v. St. Laurent*, 1999 ME 107, ¶ 13, 734 A.2d 667. The doctrine permits a Court to enforce a party's promise that is unsupported by consideration where (1) the promisor makes a promise which the promissee "should reasonably expect to induce action or forbearance on the part of the promissee or a third person," (2) the promise "does induce such action or forbearance on the part of the promissee or a third person," and (3) "injustice" can only be avoided "by enforcement of the promise." *Chapman v. Bomann*, 381 A.2d 1123, 1127 (Me. 1978) (adopting § 90(1) of the RESTATEMENT (SECOND) OF CONTRACTS). Although Maine's Law Court has not had occasion to expressly state so, it is readily apparent from the Law Court's prior decisions and articulation of the doctrine that a remedy under promissory estoppel is available only in the absence of a valid and enforceable contract concerning the subject matter of the dispute. *See e.g. Harvey*, 2008 ME 192, ¶ 11, 962 A.2d 322; *Cottle Enters.*, 1997 ME 78, ¶ 17 n.6, 693 A.2d 330; *Daigle Commercial Group, Inc.*, 1999 ME 107, ¶ 13, 734 A.2d 667; *Chapman*, 381 A.2d at 1127.[13]

Because there is no genuine dispute that a valid and enforceable contract exists concerning Defendants promise to Plaintiffs to have 15 Lindsey Way professionally cleaned prior to closing, the Court concludes that Plaintiffs' have no remedy available to them under the doctrine of promissory estoppel. (Compl. ¶ 79; Def.'s S.M.F. ¶¶ 2-9; Pl.'s Opp. S.M.F. ¶¶ 2-9); *Cottle Enters.*, 1997 ME 78, ¶ 17 n.6, 693 A.2d 330 ("Promissory estoppel is a contract doctrine invoked to enforce promises which

---

[13] This reading of promissory estoppel doctrine is consistent with the rulings of many other courts across the country. *See e.g. Great Lakes Aircraft Co. v. Claremont*, 135 N.H. 270, 290, 608 A.2d 840, 853 (1992) ("But, in all instances, application of promissory estoppel is appropriate only in the absence of an express agreement."); *Doctors Hosp. 1997, L.P. v. Sambuca Hous., L.P.*, 154 S.W.3d 634, 636 (Tex. App. 2004) ("For many years, Texas courts have held that promissory estoppel becomes available to a claimant only in the absence of a valid and enforceable contract."); *Prentice v. UDC Advisory Servs.*, 271 Ill. App. 3d 505, 513, 207 Ill. Dec. 690, 695, 648 N.E.2d 146, 151 (1995) (a remedy under the equitable theory of promissory estoppel "is not available, however, where there is in fact a contract between the parties. In such a situation, promissory estoppel becomes superfluous"); *Pierce v. Bill & Melinda Gates Found.*, 15 Wn. App. 2d 419, 435, 475 P.3d 1011, 1019 (2020) ("The doctrine of promissory estoppel does not apply where a contract governs.")

23

are otherwise unenforceable so as to avoid injustice.") The Court grants Defendants' summary judgment on count V (promissory estoppel).

## IV.  CONCLUSION

Plaintiffs' have not met their burden of establishing a prima facie case against defendants Hank Bartlett and Sheila Bartlett as to the causes of action set forth in count I (UTPA), count V (promissory estoppel), count VI (negligence), and count X (unjust enrichment).  The Court grants Defendants summary judgment as to those counts.  However, the Court denies summary judgment on count III (breach of contract), count VIII (negligent misrepresentation), and count XI (fraud), as the Court has determined that Plaintiffs' have set forth sufficient facts to set forth a prima facie case of that cause of action.

Entry:

1. Defendants Sheila Bartlett and Hank Bartlett's motion for summary judgment on counts I, V, VI, and X is GRANTED.

2. Defendants Sheila Bartlett and Hank Bartlett's motion for summary judgment on count III, VIII, XI is DENIED.

The Court directs the Clerk to incorporate this Order on the docket pursuant to Maine Rule of Civil Procedure 79(a).

**02/18/2023**

_____
Date
Entered on the docket:  03/03/2023

Ann M. Murray, Justice
Maine Superior Court

24